hPER CURIAM.
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Joseph R. Casanova, an attorney licensed to practice law in Louisiana.
UNDERLYING FACTS AND PROCEDURAL HISTORY
Two sets of formal charges were filed against respondent by the ODC. The first, 98-DB-078, was filed on October 23, 1998 and encompasses eighteen counts of misconduct involving six of respondent’s clients. The second, 99-DB-030, was filed on April 23, 1999 and encompasses three counts of misconduct involving three of respondent’s clients. The two sets of formal charges were consolidated by order of the hearing committee chairman on May 5, 1999.

*1170
98-DB-078

Counts I — III (The Green Matter)
Carla Green retained respondent to handle a divorce and child custody matter. Respondent neglected the matter, failed to refund the unearned portion of the legal fee he was paid, and failed to return Ms. Green’s file to her upon the termination of the representation. In addition, respondent failed to answer the complaint filed against him by Ms. Green, necessitating the issuance of a subpoena by the ODC.
[¡.The ODC alleges that respondent’s conduct in the Green matter violated Rules 1.3 (failure to act with diligence and promptness in representing a client), 1.16(d) (termination of the representation), 8.1(c) (failure to cooperate with the ODC in its investigation), and 8.4(g) (failure to cooperate with the ODC in its investigation) of the Rules of Professional Conduct. Respondent answered the formal charges and generally denied any intentional misconduct.
Ms. Green did not appear to testify at the formal hearing on the merits. As a result, the hearing committee recommended that Counts I and II be dismissed,[1] maintaining only Count III, pertaining to respondent’s failure to cooperate in the investigation of Ms. Green’s complaint. After consideration, the hearing committee concluded the ODC proved this violation by clear and convincing evidence.
Counts IV — VII (The Margiotta Matter)
Frank Margiotta retained respondent to handle a divorce matter. Respondent neglected the matter, failed to communicate with his client, failed to refund the unearned portion of the legal fee he was paid, and failed to return Mr. Margiotta’s file to him upon the termination of the representation. In addition, respondent failed to answer the complaint filed against him by Mr. Margiotta, necessitating the issuance of a subpoena by the ODC.
The ODC alleges that respondent’s conduct in the Margiotta matter violated Rules 1.3, 1.4 (failure to communicate with a client), 1.16(d), 8.1(c), and 8.4(g) of the laRules of Professional Conduct. Respondent answered the formal charges and generally denied any intentional misconduct.
Mr. Margiotta did not appear to testify at the formal hearing on the merits. As a result, the hearing committee recommended that Counts IV through VI be dismissed, maintaining only Count VII, pertaining to respondent’s failure to cooperate in the investigation of Mr. Margiot-ta’s complaint. After consideration, the hearing committee concluded the ODC proved this violation by clear and convincing evidence.
Counts VIII — IX (The Ban Matter)
Bonnie Ban retained respondent to handle a bankruptcy matter. Respondent failed to provide competent representation to his client and failed to cooperate with the ODC in its investigation of the complaint filed by Ms. Ban.
The ODC alleges that respondent’s conduct in the Ban matter violated Rules 1.1(a) (failure to provide competent representation to a client), 8.1(c), and 8.4(g) of the Rules of Professional Conduct. Re *1171 spondent answered the formal charges and generally denied any intentional misconduct.
Ms. Ban did not appear to testify at the formal hearing on the merits. As a result, the hearing committee recommended that both counts relating to the Ban matter be dismissed.
Counts X — XIII (The Bourgeois Matter)
In July 1995, Garry Bourgeois retained respondent to handle a wrongful death claim arising out of the drowning of his daughter, Dana Bourgeois. Respondent timely filed suit in the matter, but thereafter neglected the case, failed to communicate with his client, and failed to return Mr. Bourgeois’ file to him upon the termi-nationjjof the representation. In addition, respondent failed to answer the complaint filed against him by Mr. Bourgeois, necessitating the issuance of a subpoena by the ODC.
The ODC alleges that respondent’s conduct in the Bourgeois matter violated Rules 1.3, 1.4, 1.16(d), 8.1(c), and 8.4(g) of the Rules of Professional Conduct. Respondent answered the formal charges and generally denied any intentional misconduct.
After consideration, the hearing committee concluded the ODC proved these violations by clear and convincing evidence.
Counts XIV — XV (The Demarest Matter)
Candace Demarest retained respondent to handle a divorce and child custody matter. Respondent neglected the matter and failed to cooperate with the ODC in its investigation of the complaint filed by Ms. Demarest.
The ODC alleges that respondent’s conduct in the Demarest matter violated Rules 1.3, 8.1(c), and 8.4(g) of the Rules of Professional Conduct. Respondent answered the formal charges and generally denied any intentional misconduct.
Ms. Demarest did not appear to testify at the formal hearing on the merits. As a result, the hearing committee recommended that both counts relating to the Demarest matter be dismissed.
Counts XVI — XVIII (The Gullage Matter)
In May 1997, Sonja Tillery Gullage retained respondent to handle a domestic matter. Respondent received filing fees from Ms. Gullage, but he did not pay the fees to the court. In addition, respondent neglected the matter he was retained to handle and he failed to answer the complaint filed against him by Ms. Gullage, necessitating the issuance of a subpoena by the ODC.
|sThe ODC alleges that respondent’s conduct in the Gullage matter violated Rules 1.3, 1.15 (safekeeping property of clients or third persons), 8.1(c), and 8.4(g) of the Rules of Professional Conduct. Respondent answered the formal charges and generally denied any intentional misconduct.
After consideration, the hearing committee concluded the ODC proved by clear and convincing evidence that respondent neglected Ms. Gullage’s legal matter and failed to cooperate with the ODC in its investigation of the complaint Ms. Gullage filed. However, the committee found there was conflicting testimony regarding the sums paid by Ms. Gullage to respondent, and whether those funds were intended for court costs or for attorney’s fees. Accordingly, the committee concluded the ODC did not prove by clear and convincing evidence that respondent violated Rule 1.15 by failing to pay to the court sums intended for filing fees or other costs.

99-DB-030

Count I (The Hymel Matter)

Troy Hymel paid respondent $650 to handle two criminal matters. Respondent *1172 neglected the matters and failed to communicate with his client. In addition, respondent failed to cooperate with the ODC in its investigation of the complaint filed by Mr. Hymel.
The ODC alleges that respondent’s conduct in the Hymel matter violated Rules 1.3, 1.16, 8.1(c), and 8.4(g) of the Rules of Professional Conduct. Respondent answered the formal charges and denied any misconduct.
Mr. Hymel did not appear to testify at the formal hearing on the merits. As a result, the hearing committee recommended that Count I relating to the Hy-mel matter be dismissed.
| RCount II (The Kraus Matter)
In 1995, Robert Kraus, Sr. retained respondent to handle a divorce and child custody matter. Respondent obtained the divorce and an interim custody judgment in a reasonable period of time; however, over the following two years, he failed, despite repeated requests, to obtain a judgment of permanent custody or to provide any adequate reason for the delay.
The ODC alleges that respondent’s conduct in the Kraus matter violated Rules 1.3 and 1.4 of the Rules of Professional Conduct. Respondent answered the formal charges and denied any misconduct.
After consideration, the hearing committee concluded the ODC did not prove the alleged violations by clear and convincing evidence. The committee found that the complaint filed by Mr. Kraus stemmed from a misunderstanding with respondent regarding the objectives of the representation, and that in any event, the two-year period of inactivity did not adversely affect Mr. Kraus’ interests or prejudice or compromise his rights.

Count III (The Marquet Matter)

In March 1998, Carolyn Marquet retained respondent to handle a divorce and ancillary matters. Respondent filed a petition for divorce and obtained interim spousal support for Ms. Marquet, but he never finalized the matter and faded to communicate with his client. Eventually, Ms. Marquet’s husband obtained a divorce and a reduction of the interim spousal support previously ordered; however, respondent did not notify Ms. Marquet of this fact. Moreover, although Ms. Mar-quet terminated respondent’s representation and requested an accounting, respondent failed to provide the accounting, failed to refund the unearned portion of the legal fee he was paid, and failed to return Ms. Marquet’s file to her.
|7The ODC alleges that respondent’s conduct violated Rules 1.3, 1.4, and 1.16(d) of the Rules of Professional Conduct. Respondent answered the formal charges and denied any misconduct.
After consideration, the hearing committee concluded the ODC proved by clear and convincing evidence that respondent neglected Ms. Marquet’s legal matter and failed to communicate with her. However, the committee found no evidence that respondent failed to release Ms. Marquet’s file to her in a timely fashion after being discharged, and hence concluded that he did not violate Rule 1.16(d).[2]

Hearing Committee Recommendation

Considering the record, the hearing committee found that the baseline sanction for respondent’s misconduct is at least a reprimand but not more than a suspension from the practice of law. The committee determined that several aggra *1173 vating factors exist, including prior disciplinary offenses,[3] pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency, and substantial experience in the practice of law (admitted 1987). The committee also recognized several mitigating factors, including personal or emotional problems,[4] good character and reputation, and remorse. The committee concluded, however, that while the aggravating factors heavily outweigh the mitigating factors, respondent is nonetheless reformable:
^Respondent herein does not appear to be completely unable to discharge his professional duties. In fact, Respondent seems to be a basically competent lawyer but lacks or has forgotten skills related to the business aspects of practicing law — heretofore unable to recognize and correct serious problems with his business practices and unwilling to place limitations upon his practice and the number of clients which might be adequately, professionally served by him. Respondent also seems to lack a sincere and healthy respect for the disciplinary process, exhibiting a reluctantly reactive rather than proactive approach to addressing disciplinary matters that involve him.
There seems to be a good chance for Respondent’s reform — but not without serious correction, rehabilitation and, unfortunately, deterrence. Four separate previous admonitions for similar professional negligence did not have the effect of correcting Respondent’s professional shortcomings nor of deterring Respondent from committing further similar acts of misconduct nor of protecting the public or the legal profession as a whole.... A license to practice law is both a privilege and [a] responsibility which must not be taken for granted. The safety and confidence of the general public — especially those individuals who might one day become Respondent’s clients — together with the integrity of the legal profession and the disciplinary process demand more than just another simple, easily-forgotten warning to Respondent.
Based on this reasoning, the committee recommended respondent be suspended from the practice of law for eighteen months, with all but six months deferred. Prior to reinstatement, the committee recommended that respondent be required to attend not less than six additional hours of CLE specifically related to law office management, and that upon reinstatement, he be placed on supervised probation for a period of eighteen months “for the purpose of ensuring that Respondent’s list of active clients does not swell again to such numbers as to overwhelm and greatly exceed Respondent’s abilities to serve them effectively/professionally and for the purpose of monitoring Respondent’s office and business practices regarding the manner in which he is servicing those clients.”
| ¡Neither respondent nor the ODC filed an objection to the hearing committee’s recommendation.

*1174
Disciplinary Board Recommendation

The disciplinary board agreed that the hearing committee’s factual findings are supported by the record, and that the hearing committee correctly applied the Rules of Professional Conduct. With respect to the failure to cooperate charges, the board found respondent acted knowingly or negligently and that his actions caused harm by requiring the ODC to expend additional time and money in attempting to obtain information and a response from him. With respect to the client-related charges (neglect of legal matters, failure to communicate with clients, and failure to properly terminate the representation), the board found respondent acted negligently and that his actions, in some cases, caused harm or potential harm to his clients. The board concurred in the aggravating and mitigating factors cited by the hearing committee.
Considering the ABA’s Standards for Imposing Lawyer Sanctions and the prior jurisprudence, the board concluded the baseline sanction for respondent’s misconduct is a one-year suspension from the practice of law. In this case, however, the board felt an upward deviation was warranted in light of the fact that five clients were harmed by respondent’s knowing or negligent misconduct, and considering the aggravating factors, particularly respondent’s prior disciplinary record. The board agreed with the hearing committee that an eighteen-month suspension, followed by probation, is appropriate, and that deferral of a portion of the suspension is justified considering the mitigating factors and the protections provided by the imposition of a probationary period. Accordingly, the board recommended that respondent be suspended from the practice of law for eighteen months, with all but six months deferred, followed by an eighteen-month period of supervised probation, subject to the conditions |inrecommended by the hearing committee. The board also recommended that respondent be assessed with all costs and expenses of these proceedings, with legal interest to commence running thirty days from the date of finality of the court’s judgment until paid.
One member of the disciplinary board agreed that an eighteen-month suspension is appropriate in this case, but dissented from the deferral of any portion of the suspension.
Neither respondent nor the ODC filed an objection to the recommendation of the majority of the disciplinary board. However, pursuant to Supreme Court Rule XIX, § 11(G)(1)(a), this court ordered the parties to submit written briefs within twenty days, addressing the appropriateness of the proposed sanction. Both parties timely filed briefs in response to this order.
DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
Based on our independent review, we conclude the findings of the hearing committee and the disciplinary board are sup *1175 ported by the record. It is evident that respondent failed to use reasonable diligence on behalf of his clients and failed to |1¶ communicate with them, failed to return unearned fees or to provide accountings, failed to properly terminate the representation of his clients, and failed to cooperate with the ODC.
Having found professional violations, we now turn to a determination of the appropriate sanction for this misconduct. In determining an appropriate sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
In In re: Trichel, 00-1304 (La.8/31/00), 767 So.2d 694, we recognized that the baseline sanction for neglect of a client matter, failure to communicate, and failure to properly terminate the representation of one client was a one-year suspension from the practice of law. However, we found the aggravating factors in the case, particularly the respondent’s prior discipline for similar misconduct, justified raising the sanction to an eighteen-month suspension.
The instant matter involves multiple counts of neglect of legal matters and failure to communicate involving several clients, as well as charges of failure to cooperate and the failure of respondent to properly terminate the representation of his clients. Consequently, the baseline sanction in this case is greater than the one-year suspension identified in Trichel. Although some mitigating factors exist, the hearing committee properly recognized that they are heavily outweighed by the aggravating factors present. Most disturbing among the aggravating factors is respondent’s prior disciplinary record of four admonitions between 1996 and 1998 for misconduct | ^similar to that at issue in the instant case.[5] Each of these admonitions presented respondent with an opportunity to correct his deficiencies, but it is obvious that he did not avail himself of the chances he was given. Respondent now represents to this court that he has taken steps to improve the management of his office, and asks for a second chance. While we commend respondent for his efforts, there is a limit to this court’s patience. We will not tolerate a pattern of conduct which places an attorney’s clients at risk. Quite simply, nothing less than a fairly lengthy suspension would be responsive to the misconduct in this case.
Accordingly, we will suspend respondent from the practice of law for a period of eighteen months.
DECREE
Upon review of the findings and recommendation of the hearing committee and disciplinary board, and considering the record and the additional briefing of the parties, it is ordered that Joseph R. Casanova be suspended from the practice of law in Louisiana for a period of eighteen months. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence *1176 thirty days from the date of finality of this court’s judgment until paid.
CALOGERO, C.J., and KIMBALL, J., dissents and would approve the recommendation of the disciplinary board.

. The disciplinary board concurred in the dismissal of these charges, as well as the committee’s recommendation to dismiss the other charges in which the complainant did not appear to testify in person at the formal hearing. The ODC did not file an objection in this court to the dismissal. Our review of the record indicates the committee's dismissal was appropriate, as there is no clear and convincing evidence of a professional violation by respondent with respect to these charges. Accordingly, the merits of these allegations of misconduct will not be discussed further.

. Respondent released Ms. Marquet's case file to her new attorney in May 1999, one month after the formal charges were filed.

. Respondent has been admonished on four occasions for misconduct substantially similar to that at issue here: 96-ADB-076 (failure to cooperate with the ODC in its investigation); 97-ADB-008 (failure to refund unearned fees and failure to release the client’s file upon termination of the representation); 97-ADB-076 (neglect of a legal matter, failure to communicate with a client, and failure to cooperate with the ODC); 98-ADB-047 (failure to cooperate with the ODC).

. Respondent and his wife, who served as his office manager and paralegal, were in the midst of a contentious divorce during the period of time the misconduct at issue occurred.

. Other aggravating factors are present: pattern of misconduct, multiple offenses, obstruction of the disciplinary process, and substantial experience in the practice of law.